THIBERG v. BACH.

Civ. No. 790–49.

United States District Court
D. New Jersey.

Oct. 3, 1952.

Schenck, Price, Smith & King, Morristown, N. J., Campbell, Brumbaugh, Free & Graves, New York City, for plaintiff.

Harry Sommers, Newark, N. J., for defendant.

MEANEY, District Judge.

Plaintiff instituted this action seeking an injunction and an accounting of profits for alleged patent infringement and unfair competition. In addition, alleging that the character of the infringement was wilful, wanton and deliberate, plaintiff asks that the damages be trebled. Costs and a reasonable attorney's fee are also sought. Defendant filed an answer denying both the infringement and the unfair competition and asserting the invalidity of the letters patent by reason of anticipation by the prior art and prior public use and sale.

The patent in suit, United States Letters Patent #2,471,796 was issued to plaintiff on May 31, 1949 on an application filed October 1, 1945. Plaintiff has been and continues to be the owner of said patent. Claims three through nine are in suit in the proceeding. Plaintiff's patent discloses an air pump for aquarium aerators. It is directed toward a small electromagnetically driven diaphragm pump, with particular reference to the structure of the pump chamber and diaphragm assembly, which is disclosed.

The pump chamber designed by Thiberg consists of a base member having at the center of its top surface an upwardly open cavity equipped with inlet and outlet valves. Surrounding this cavity is an upstanding annular ridge or bead. A thick rubber diaphragm is then placed over the cavity and the surrounding ridge. The diaphragm is clamped to the base member by an annular washer which is secured to said base member by screws. In the placing and clamping of the diaphragm in conjunction with the upstanding annular ridge and the clamping ring, a domed effect in the diaphragm is produced. The doming effect produces a greater volume of air in the pump chamber before it is operated on by the pressure. This increase in air volume is in direct proportion to the tightness of the diaphragm.

In essence plaintiff's pump operates in the following manner: Current coming in energizes a magnet which draws up an armature which is attached to a domed diaphragm. This causes air to be drawn through a valve into the space formed by the depression and the diaphragm. As the cycle continues, the magnet is demagnetized, the armature is released and the weight of the armature and the elasticity of the diaphragm cause the diaphragm to drop, forcing the air out through the outlet valve.

Patentee asserts that his new or novel idea is the use of the upstanding annular ridge or bead in combination with a substantially flat rubber diaphragm and a clamping ring. These form the unique diaphragm assembly which has a twofold purpose. Its first purpose is to combine with the recessed base member and form the pump chamber and its second is to provide greater air volume and a smoother working operation due to the inherent tuning of the apparatus.

The issuance of the letters patent is prima facie evidence of validity. See Smith, Kline & French Laboratories v. Clark & Clark, D.C.D.N.J. 1945, 62 F.Supp. 971.

To overcome this presumption certain prior art patents are advanced by the defendant. Smith Patent #1,976,098 of 1934 discloses the formation of a chamber by use of a diaphragm and a body with a concaved face. It is pertinent to note the similarity between the language used in this patent and the patent in suit.

Claim one of Smith reads as follows: "In an air pump, a body having a con-

caved face, an annular seat in said face, a diaphragm fitting in said seat, an annulus engaging the marginal edge of the diaphragm and suitably secured to said body to thereby secure the diaphragm thereto in leak-proof relation, said diaphragm being spaced from the concaved face of said body and cooperating therewith to provide a chamber * * *".

Claim 6 of the patent in suit teaches "A pump comprising a base having an upstanding annular ridge, an elastic diaphragm over the ridge and having the outer marginal portions all projecting outside of the ridge and air-tight against the base to form a pump chamber bounded by the base and diaphragm * * *". Further, the language of claims 7, 8 and 9 of the patent in suit evidences the same similarity.

Richards Patent #2,265,613 of 1941 relates to the construction of a pump employing a bellows. It teaches the formation of a pump chamber by a bellows having an end secured to the interior wall of a casing. The securing is accomplished by the use of an annular clamping member and clamping screws. It is also pertinent to note that the substitution of a diaphragm, secured at its outer edges by an annular clamping ring and screws, for the bellows, is disclosed in this patent.

Another antecedent patent, Nahman # 1,934,994 of 1933, discloses a flexible annular membrane clamped to the periphery of the pumping body and to the interior of the fixed body to secure an air-tight connection between the same.

The disclosures of the above patents indicate that a diaphragm, and a concave base with the diaphragm secured to said concave base by means of an annular clamping ring, combining to form a pump chamber, are by no means new or novel. Even the combination of the annular clamping ring and the diaphragm to form an air-tight connection has been disclosed by the prior art.

Plaintiff's patent stresses the uniqueness of its diaphragm assembly. However, the only addition made by plaintiff has been the upstanding annular ridge or bead. His other elements have been used by his predecessors in the field. When one considers the stress placed on this assembly, both at the trial and in the briefs, the disclosures of the prior art present extremely cogent arguments for the invalidity of the patent.

Farrow Patent #2,253,206 of 1941 also discloses the use of a clamping ring. Here it is used to hold a thin membraneous pumping member (preferably steel) against a valve plate. The result is a fluid collecting chamber. The membraneous pumping member is placed between the flange on the valve plate and the clamping ring. Screws are provided to hold the pieces in their proper relation. In addition the pumping member is "dished or cupped." The domed effect disclosed in the patent in suit is created by disposing the diaphragm over the base with its annular bead and placing the clamping ring thereon.

It is apparent from the previous discussion that the plaintiff's only contribution has been the annular ridge or bead. The alleged doming effect has been produced in the Farrow patent. Further, it is felt that even if "cupping or dishing" had not been disclosed by Farrow, plaintiff's doming would not be such as to call upon this Court to bestow upon his pump the merit of invention. A combination of previously disclosed elements does not by the mere utilization of the well-known elastic properties of rubber, reveal a "flash of creative genius." See Cuno Engineering Corp. v. Automatic Devices Corp., 1941, 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58. Rather, it is indicative of the skill of the calling.

Plaintiff offered evidence of commercial success. There was testimony that the pump in suit filled a void in the field in that it was the first of its kind to possess the qualities of economy and successful operation. Such evidence, without invention, does not make for patentability. See Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U. S. 147, 71 S.Ct. 127, 95 L.Ed. 162.

Since, in the opinion of this Court, the patent is invalid by reason of anticipation by the prior art and lack of invention,

it is unnecessary to consider the merits of the alleged prior public use and sale.

The question of infringement having been disposed of, it is now proper to proceed to the determination of the claim of unfair competition.

The gravamen of the charge is the use by the defendant, to his advantage and to the disadvantage of the plaintiff, of knowledge and information which defendant had acquired from plaintiff in trust and confidence.

Defendant came to work for plaintiff in February, 1945. Prior to that time he had never been engaged in any way in the assembly or manufacture of aerator pumps. Plaintiff was at this time manufacturing pumps in his basement. As his business expanded, plaintiff needed more helpers, and, in addition to some others, brought defendant into his basement shop. While there it is undisputed that defendant engaged in all facets of the manufacture and assembly of pumps. He rose to the position of foreman of the small group and became possessed of a certain amount of skill in this field. The basement shop was not divided into separate sections. All operations conducted there were open to the view of any of the employees. In addition, from time to time customers coming to see plaintiff were allowed to wander about the shop without any restraint. There is evidence on the part of both litigants that defendant enjoyed plaintiff's trust and confidence.

In 1947, when plaintiff went to Europe, he left defendant in charge of production in the shop and disclosed to him his sources of supply. During the summer of 1948 some trouble arose in the basement shop, as a result of which defendant was discharged in November of that year. A few months prior to his discharge defendant had ordered some parts used in the production of the pumps. These were not for the use of plaintiff.

Shortly thereafter defendant commenced manufacturing his own pumps. A pump which he had made was in evidence at the trial. While the issue of infringement was never reached due to the finding of in-

validity, recollection and review of the testimony demonstrate that the few differences between the two pumps are so minor as to be negligible.

Thus the issue confronting the Court is whether the defendant has unfairly competed, that is, used trade secrets acquired from his former employer to his own advantage.

■ The law governing the disposition of an unfair competition charge is that of New Jersey. See Campbell Soup Co. v. Armour & Co., 3 Cir., 1949, 175 F.2d 795.

■ It is elementary that the absence of any express covenant between the parties does not affect the doctrine of trade secrecy if it should be established that such did in fact exist in this case. See Consolidated Boiler Corp. v. Bogue Electric Co., Chanc. 1948, 141 N.J.Eq. 550, 58 A.2d 759. The Court in that case held that one who acquires knowledge of trade secrets in a confidential capacity, such as an employee, is under an obligation, enforceable in equity, not to disclose such secrets or use them for his own advantage. See Consolidated Boiler case, above.

In a more recent New Jersey case the field of protection of trade secrets was considered and amplified. See Boost Co. v. Faunce, Super.Ct.Ch.Div. 1951, 13 N.J. Super. 63, 80 A.2d 246. The Court cited the Restatement Rules regarding trade secrets and we accept them as the controlling law.

Restatement, Torts, Vol. IV, Sec. 757, comment (b), provides as follows: "A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device, or a list of customers * * *. A trade secret is a process or device for continuous use in the operation of the business. Generally it relates to the production of goods, as, for example, a machine or formula for the production of an article. * * *"

Plaintiff's trade secret was the technique or knowledge of method of construction he imparted to the defendant. This technique related to the assembly of the. elements comprising his pump. While his pump is not patentable invention, it is nonetheless his product and the techniques or methods he has perfected for its assembly are entitled to protection if they were entrusted to the defendant in confidence. See Restatement, supra, comment (b) Novelty and prior art.

That defendant enjoyed plaintiff's confidence is uncontroverted. In addition, defendant's knowledge relating to aerator pumps was nil prior to his association with plaintiff. Certainly, he may use for his own gain the mechanical skill which he has acquired by virtue of his employment. However, he may not produce a pump which, but for negligible differences, corresponds identically with that of plaintiff, where to do so he must violate plaintiff's processes imparted to him in confidence.

Accordingly, this Court finds that the defendant has been guilty of unfair competition.

An appropriate order should be submitted in conformity with this opinion.