UNITED STATES COURT OF APPEALS
For the Fifth Circuit

_____

No. 01-40907

_____


KENNETH L. RORIE, d/b/a Kentex,

Plaintiff-Appellee,

VERSUS


TRACY EDWARDS,
individually, d/b/a Tyler Fab & Equipment, d/b/a Remco,

SHERRI EDWARDS,

C. WAYNE HEWITT,
individually, d/b/a Red Eye Machine, d/b/a Remco,

Defendant-Appellant.


_____

Appeal from the United States District Court for the
Eastern District of Texas, Tyler
CA# 6:00-CV 141
_____
August 13, 2002


Before DAVIS, DeMOSS, and STEWART, Circuit Judges.

PER CURIAM:[*]

Appellants challenge the district court's judgment against

_____

[*] Pursuant to 5th Cir. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5th Cir. R. 47.5.4.

1

them for misappropriation of trade secrets, disparagement, and false advertising, primarily on grounds that the evidence does not support the verdict and judgment. For the reasons that follow, we affirm in part, vacate in part, and remand.

I.

Plaintiff-appellee Kenneth Rorie owns and operates a business called Kentex that builds machines including coil processing machines that unroll coiled sheet metal, bend it flat, and cut it to a desired length and width. Kentex is housed in a locked building in a rural area.

Tracy Edwards joined Kentex in 1985 as a laborer and was soon promoted to shop manager. As shop manager, Edwards used many of the plans for the coil processing machine and had access to all the plans. Rorie gave Edwards some of the responsibility for the security of the plans and instructed him to release the plans on a need to know basis. Although there was no written agreement, Rorie informed Edwards in several conversations that the plans were confidential and that Edwards should protect that confidentiality.

In 1998, Edwards left Kentex to start his own business. In his new business, Edwards used Rorie's plans to build a machine similar to that sold by Kentex. He sold his first machine to Standard Structures, a former Kentex customer.

Rorie sued Edwards, his wife, and Wayne Hewitt in Texas state court on a number of state unfair competition causes of action, and

2

for false advertising under the Lanham Act.  Defendants filed a defamation and Lanham Act counterclaim.  Defendants removed the case to federal district court.

The district court dismissed defendants' counterclaims in a partial summary judgment order.  Rorie then abandoned a number of his state law claims and went to trial on theft of trade secrets, disparagement, and false advertising under the Lanham Act.  The jury found against the defendants on the claims of (1) trade secret misappropriation and awarded a royalty of $150,000, plus $50,000 in punitive damages; and (2) disparagement and awarded $50,000 special damages and $50,000 punitive damages.  The court found against Edwards and in favor of Rorie on the Lanham Act claim of false advertising and awarded one dollar of nominal damages and injunctive relief, but denied Rorie's application for attorneys' fees under the Act.

Defendants timely filed a notice of appeal.

## II.

The appellants first challenge the sufficiency of the evidence for the jury's finding that the coil processing machine and plans for its construction were trade secrets; Edwards also challenges the sufficiency of the evidence for the jury's royalty award for misappropriation of those secrets.  This court reviews such challenges *de novo*, making the same inquiry required of the district court.  As we have stated:

3

We employ a deferential standard of review when examining a jury's verdict for sufficiency of the evidence. "Unless the evidence is of such quality and weight that reasonable and impartial jurors could not arrive at such a verdict, the findings of the jury must be upheld." We may not reweigh the evidence, re-evaluate the credibility of the witnesses, nor substitute our reasonable factual inferences for the jury's reasonable inferences. We must view the evidence in the light most favorable to upholding the jury's verdict and may only reverse if the evidence points "so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary conclusion." Questions of law, of course, we review de novo.[1]

Under Texas law, the tort of trade secret misappropriation is established by showing: "(a) a trade secret existed; (b) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means; and (c) use of the trade secret without authorization from the plaintiff."[2] The Texas Supreme Court has adopted the definition of "trade secret" provided by the Restatement of Torts.[3]

A trade secret may consist of any formula, pattern,

---

[1] Douglas v. DynMcDermott Petroleum Operations Co., 144 F.3d 364, 369 (5th Cir.1998), *quoting* Ham Marine, Inc. v. Dresser Indus., Inc., 72 F.3d 454, 459 (5th Cir.1995); Hiltgen v. Sumrall, 47 F.3d 695, 699-700 (5th Cir.1995); *citing* Pagan v. Shoney's, Inc., 931 F.2d 334, 337 (5th Cir.1991); U.S. v. O'Keefe, 128 F.3d 885, 893 (5th Cir.1997), *cert. denied*, 523 U.S. 1078 (1998); Munn v. Algee, 924 F.2d 568, 575 (5th Cir.1991).

[2] Alcatel USA, Inc. v. DGI Technologies, Inc., 166 F.3d 772, 784 (5th Cir. 1999), *citing* Phillips v. Frey, 20 F.3d 623, 627 (5th Cir. 1994).

[3] *See* Taco Cabana Intern., Inc. v. Two Pesos, Inc., 932 F.2d 1113, 1123 (5th Cir. 1991), *citing* Hyde Corp. v. Huffines, 158 Tex. 566, 586, 314 S.W.2d 763, 776 (adopting Restatement of Torts § 757 (1939)), *cert. denied*, 358 U.S. 898 (1958).

device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, *a pattern for a machine or other device*, or a list of customers. ... A trade secret is a process or device for continuous use in the operation of the business. Generally it relates to the production of goods, as, for example, a machine or formula for the production of an article.[4]

Appellants argue that under Texas law, Rorie's machine and its plans cannot be protected as trade secrets. The Texas and U.S. Supreme Courts have held that trade secret law does not protect a good or its plans that may be produced from reverse engineering.[5] Appellants also argue that the machine and its plans are not secret because the machine was almost identical to all competitor machines, hence their only competitive advantage was the time appellants saved by not having to reverse engineer the machine.

These arguments are not persuasive. We believe that Texas law is clear:

One may use his competitor's secret process if he discovers the process by reverse engineering applied to the finished product; one may use a competitor's process if he discovers it by his own independent research; but one may not avoid these labors by taking the process from the discoverer without his permission at a time when he is taking reasonable precautions to maintain its secrecy. To obtain knowledge of a process without spending the time and money to discover it independently is improper

---

[4] Hyde Corp., 158 Tex. at 586, 314 S.W.2d at 776, *quoting* Restatement of Torts § 757 (emphasis added).

[5] Wissman v. Boucher, 240 S.W.2d 278, 279-80 (Tex. 1951); Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 1 (1989).

unless the holder voluntarily discloses it or fails to take reasonable precautions to ensure its secrecy.[6]

Viewing the facts in the light most favorable to the verdict, we are satisfied that the machine and its plans were secrets. Rorie kept his building locked and never allowed his suppliers or contractors access to any plan beyond what was needed. We are also satisfied that Edwards was under a duty not to improperly use the plans. As we have stated, trade secret "protection will be awarded to a trade secret holder against the disclosure or unauthorized use by those to whom the secret has been confided under either express or implied restriction of nondisclosure or by one who has gained knowledge by improper means."[7] Edwards was Rorie's right-hand man, with overall responsibility to construct the machine. Rorie repeatedly informed Edwards that the plans were proprietary and that Edwards was to provide plans to suppliers on a need-to-know basis. We are therefore satisfied that the record was sufficient for the jury to find that Rorie took adequate steps to protect the confidentiality of the plans and that Edwards violated Rorie's

---

[6] E. I. duPont deNemours & Co. v. Christopher, 431 F.2d 1012, 1015-16 (5th Cir. 1970).

[7] Phillips at 629, *citing* Kewanee Oil Co. v. Bicron Corp., 94 S.Ct. 1879, 1883 (1974). *See also* Taco Cabana at 1123, *citing* Furr's, Inc. v. United Specialty Advertising Co., 385 S.W.2d 456, 459 (Tex.Civ.App.--El Paso 1964, writ ref'd n.r.e.), *cert. denied*, 382 U.S. 824 (1965)(A secret-holder "will lose his secret by its disclosure unless it is done in some manner by which he creates a duty and places it on the other party not to further disclose or use it in violation of that duty.")

trust when he misappropriated the plans and built the coil processing machine.

A reasonable royalty is the appropriate measure of damages for the misappropriation of the trade secret in this case. Appellants argue that under Metallurgical Industries, Inc. v. Fourtek, Inc., the estimation of damages that underlies the quantification of a reasonable royalty may not be based on "sheer speculation. If too few facts exist to permit the trier of fact to calculate proper damages, then a reasonable remedy in law is unavailable."[8]

Appellants' argument is unavailing because the jury did not base its award on "sheer speculation." The cases allow a plaintiff considerable flexibility in establishing a reasonable royalty. If actual losses are not known, a reasonable royalty should be awarded, based on the legal fiction of a licensing price for the secrets.

> In calculating what a fair licensing price would have been had the parties agreed, the trier of fact should consider such factors as the resulting and foreseeable changes in the parties' competitive posture; the prices past purchasers or licensees may have paid; the total value of the secret to the plaintiff, including the plaintiff's development cost and the importance of the secret to the plaintiff's business; the nature and extent of the use the defendant intended for the secret, and finally whatever other unique factors in the particular case might have affected the parties' agreement, such as the ready availability of alternative process.[9]

---

[8] 790 F.2d 1195, 1208 (5th Cir. 1986).

[9] *Id.* at 539, *citing* Hughes Tool Co. v. G. W. Murphy Industries, Inc., 491 F.2d 923, 931 (5th Cir. 1973).

Rorie asked for $140,000 to $150,000 as a reasonable royalty, based on the money he testified he spent on research and development to create his plans, lost gross profits from two machines per year for two years, and the effect the loss of profits had upon his competitive research and development. Plaintiff produced sufficient evidence to support the award.

III.

Appellants next challenge the sufficiency of the evidence to support the jury's finding of false advertising under the Lanham Act. They argue that Rorie failed to demonstrate that the advertising was false. Rorie produced evidence that Edwards (1) copied Rorie's brochure almost verbatim from the Kentex brochure, (2) misrepresented the capabilities of the copycat machine, and (3) posted a picture of a machine on his website that Edwards did not actually manufacture.

The court awarded Rorie one dollar in nominal damages consistent with the jury verdict. The court also entered a permanent injunction that prevented Edwards from (1) distributing advertising material using the text, or deceptively similar text, of Rorie's brochure, or (2) distributing or posting advertising material displaying photographs of any machines Edwards did not actually or substantially manufacture.

The elements of a Lanham Act claim for false advertising are: (1) a false or misleading statement of fact about a product; (2)

8

that either deceived or had the capacity to deceive a substantial segment of potential consumers; (3) the deception is material, in that it is likely to influence the consumer's purchasing decision; (4) the product is in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the statement at issue.[10]

If a statement of fact is shown to be literally false, then deception is inferred.[11] If a plaintiff is seeking damages based on a statement that is ambiguous or misleading, however, actual deception may not be inferred and must be proven.[12]

Rorie presented no evidence that any consumers were confused or deceived by the brochure or Edwards' representation of the abilities of Edwards' machine. But the jury was entitled to find that Edwards made a literally false statement when he depicted a machine (frame welder) that he did not build as his own on his website. Although the machine shown on the website was a frame welder and not a coil processor, Edwards' implicit representation that he produced this machine apparently led the jury to conclude that Edwards was trying to project an image as a much more experienced manufacturer in this field than he actually was. This

---

[10] *See* Pizza Hut, Inc. v. Papa John's Intern., Inc., 227 F.3d 489, 495 (5th Cir. 2000).

[11] *See id.* at 497.

[12] *See id.*

evidence was sufficient--although barely--to support the Lanham Act injunction and nominal damages.

IV.

Tracy Edwards argues that the business disparagement verdict must be reversed, because Rorie failed to prove special damages--an essential element of the tort. This court has interpreted the Texas requirement for special damages in disparagement cases as follows: "To prove special damages, a plaintiff must provide evidence of direct, pecuniary loss attributable to the false communications of the defendant."[13]

Rorie presented ample evidence to show that Edwards disparaged Rorie's equipment and customer service before and after he left Kentex. Rorie showed that his coil machine sales receipts fell from $333,000 in 1998 to $156,000 in 1999 to $80,000 in 2000. He sold seven machines in 1998, three in 1999, and two in 2000. Edwards sold three machines during this time. But Rorie admitted that he could not say that any of his lost sales were attributable to Edwards' disparaging remarks about the Kentex machine. And Rorie produced no other probative evidence connecting his loss in sales to Edwards' remarks. Rorie's proof was therefore insufficient to show a "direct pecuniary loss" attributable to Edwards' remark. We must therefore vacate the award for both pecuniary and punitive damages for disparagement.

---

[13] Johnson v. Hospital Corp. of America, 95 F.3d 383, 391 (5th Cir. 1996).

V.

Appellants argue that the injunction regarding appellants' trade secret misappropriation is overbroad in that it prevents his use of any "document" that they obtained from Rorie and not limited to the plans the jury found to be trade secrets. We are satisfied that the court used the word "document" to identify the plans found to be trade secrets, and giving the injunction this interpretation, it is not overbroad.

VI.

Appellants filed a counterclaim for violation of the Lanham Act and defamation based upon investigative letters mailed by Rorie during the investigative stage of the lawsuit. The district court held these letters to be absolutely privileged under Texas law as part of the judicial process. Appellants argue on appeal that the database of addresses that Rorie used to send his investigative letters included organizations and businesses that could not possibly be connected to a reasonable investigation. The record reveals no evidence to conflict with Rorie's affidavits that from the database, he only sent the letter to clients and potential clients. The district court did not err in its ruling on privilege.

VII.

For the reasons stated above, we affirm the judgment of the district court except for the compensatory and punitive damage

11

award on plaintiff Rorie's disparagement claim.[14]  Because the evidence does not establish an essential element of Rorie's disparagement claim, we vacate the award on this claim and remand the case to the district court for entry of judgment consistent with this opinion.

AFFIRMED IN PART, VACATED IN PART, REMANDED.

---

[14]Appellants also seek attorneys' fees based on the Texas Theft Liability Act.  Rorie originally brought his trade secrets action under this Act, but he abandoned this statutory action prior to trial.  Had Rorie seen the action through, the prevailing party would have been entitled to attorneys' fees, but he did not.  Hence neither side is entitled to attorneys' fees under the Act.