

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

---

No. 02-25-00203-CV

---

BRIAN SWANSON AND SCOTT FAUST, Appellants

V.

FIRST COMMAND ADVISORY SERVICES, INC., FIRST COMMAND
INSURANCE SERVICES, INC., AND FIRST COMMAND BANK, Appellees

---

On Appeal from the 141st District Court
Tarrant County, Texas
Trial Court No. 141-361627-25

---

Before Birdwell, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Appellants Brian Swanson and Scott Faust appeal the trial court's order denying their motion to modify or dissolve a temporary injunction previously entered by the trial court. In a single issue, Appellants argue that the trial court abused its discretion by denying their motion, asserting that the temporary injunction does not comply with Texas Rule of Civil Procedure 683 and is therefore void. Because we conclude that the trial court did not abuse its discretion when it denied Appellants' motion, we affirm.

## I. Background

Appellees First Command Advisory Services, Inc. (FCAS), First Command Insurance Services, Inc. (FCIS), and First Command Bank (collectively, First Command) provide financial planning, insurance, trust, and investment services. First Command currently provides its services throughout the United States through a network of independent contractor financial advisors but began with a focus on active-duty members of the U.S. military.

Swanson and Faust began working as independent contractor financial advisors for First Command in 2006 and 2014, respectively. When they began working for First Command, Appellants signed a "Financial Advisor/Agent Agreement" (the Agreements), each of which contained confidentiality, non-solicitation, and non-compete provisions. Appellants were prohibited from "tak[ing] . . . any opportunities that [we]re discovered through the use of corporate assets, information[,] or position";

"us[ing] corporate property, information, or position for improper personal gain"; or "compet[ing] with the company directly or indirectly." Appellants were also prohibited from "tak[ing] advantage of non-public personal information for [their] own benefit."

Appellants agreed to follow all First Command policies and procedures, including the confidentiality, non-solicitation, and non-compete provisions. Upon termination of the Agreements, Appellants agreed to return to First Command all of its documents and property and to allow First Command to inspect and purge their equipment—including their personal cellphones—of any confidential information and data.

In October or November 2024, Appellants began having "discussions" with CWM, LLC d/b/a Carson Partners and Diamond Wealth Advisors. On January 31, 2025, Appellants resigned from First Command and immediately began working as independent contractors for Carson Partners and Diamond Wealth. In their resignation letters, Appellants preemptively requested that First Command notify Appellants' shared attorney of any legal action filed by First Command and demanded arbitration.

When it received Appellants' resignation letters, First Command requested that Appellants turn in their personal cell phones for inspection and purging of First Command client information. Appellants declined to give First Command their personal cell phones.

3

In the days following their resignations, Appellants set up meetings and phone calls with First Command clients, including clients whom they had serviced during their affiliation with First Command. Appellants had compiled a list of First Command clients and their contact information while they still had access to First Command's client database, though they claimed that they had created the list from memory and whitepages.com. Appellants informed at least sixty First Command clients that they had begun working for Carson Partners and Diamond Wealth, and during some of their meetings with First Command clients, Appellants shared confidential information about changes in First Command's fees.

On February 4, 2025, First Command filed an original petition and an application for a temporary restraining order (TRO) and a temporary injunction.[1] In its petition, First Command asserted causes of action for breach of contract and tortious interference and alleged that Appellants had conspired with Carson Partners and Diamond Wealth. The same day, the trial court signed a TRO and set a hearing on the temporary injunction. Appellants continued to solicit and acquire First Command clients.

Following the temporary-injunction hearing, the trial court signed a seven-page temporary injunction (1) enjoining Appellants from soliciting First Command clients and from using or disclosing any First Command confidential information or trade

---

[1]First Command also initiated arbitration against Appellants on its claims that do not involve injunctive relief. According to First Command, the arbitration proceeding remains pending.

secrets and (2) ordering Appellants to return any and all First Command records or documents and to provide to First Command for inspection and purging all equipment and devices, including their personal cell phones. Appellants did not appeal from the trial court's order granting the temporary injunction.

Less than two months later, First Command filed a motion for contempt and sanctions against Appellants, alleging that they had continued to violate the TRO and had violated the trial court's temporary injunction. The trial court signed an "Order to Show Cause" and ordered Appellants to appear for a show-cause hearing.[2] In response, Appellants filed a "Motion to Modify or Dissolve Temporary Injunction," asserting that the temporary injunction was void because it failed to comply with Texas Rule of Civil Procedure 683.

The trial court heard Appellants' motion to modify or dissolve the temporary injunction and denied it, and Appellants filed this interlocutory appeal of the trial court's denial. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4).

## II. Standard of Review

We review a trial court's order on a motion to modify or dissolve a temporary injunction for an abuse of discretion. *See Tober v. Turner of Tex., Inc.*, 668 S.W.2d 831, 834 (Tex. App.—Austin 1984, no writ) (citing *Marshall v. Good Times, Inc.*, 537 S.W.2d 536, 538 (Tex. App.—Fort Worth 1976, writ dism'd)). The trial court abuses its

---

[2]First Command's motion for contempt and sanctions remains pending in the trial court.

discretion only if it acts without reference to any guiding rules or principles—that is, if its act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). The movant has the burden to show that the trial court abused its discretion. *Tober*, 668 S.W.2d at 834 (citing *Marshall*, 537 S.W.2d at 538).

The scope of our review is limited to the trial court's decision to grant or deny the motion to modify or dissolve; we do not review the propriety of the trial court's original decision to grant the temporary injunction. *Conlin v. Haun*, 419 S.W.3d 682, 685, 686 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *see Tober*, 668 S.W.2d at 834; *Marshall*, 537 S.W.2d at 538. We presume that the temporary injunction was not improvidently granted and that the record supports the trial court's decision to grant it. *Murphy v. McDaniel*, 20 S.W.3d 873, 877 (Tex. App.—Dallas 2000, no pet.) (citing *Tober*, 668 S.W.2d at 835). Indeed, the purpose of a motion to dissolve a temporary injunction "is not to give an unsuccessful party an opportunity to relitigate the propriety of the original grant." *Tober*, 668 S.W.2d at 836.

### III. Rule 683

When determining if a temporary-injunction order is sufficiently specific to comply with Rule 683, we look no further than the order itself. *Powell v. Baker*, No. 04-22-00653-CV, 2023 WL 5418810, at *10 (Tex. App.—San Antonio Aug. 23, 2023, no pet.) (mem. op.); *AutoNation, Inc. v. Hatfield*, 186 S.W.3d 576, 582 (Tex. App.—Houston [14th Dist.] 2005, no pet.). A temporary-injunction order that does not

6

strictly satisfy Rule 683's requirements is void. *In re Luther*, 620 S.W.3d 715, 722 (Tex. 2021) (orig. proceeding); *Bellefeuille v. Equine Sports Med. & Surgery, Weatherford Div., PLLC*, No. 02-15-00268-CV, 2016 WL 1163364, at *3 (Tex. App.—Fort Worth Mar. 24, 2016, no pet.) (mem. op.).

To satisfy Rule 683's requirements, a temporary-injunction order must "set forth the reasons for its issuance" and "be specific in terms." Tex. R. Civ. P. 683. The order must also "describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained" and state precisely why the applicant would suffer irreparable injury in the absence of an injunction preserving the status quo pending a trial on the merits. *Id.*; *Williams v. NE CS First Nat'l, LP*, No. 02-23-00086-CV, 2023 WL 4781174, at *2 (Tex. App.—Fort Worth July 27, 2023, no pet.) (mem. op.). An unsupported or conclusory statement that irreparable harm would occur without the injunction is insufficient to satisfy Rule 683. *Williams*, 2023 WL 4781174, at *2. Accordingly, "we cannot infer the reasons for an injunction from the pleadings, evidence presented at the hearing on the application, or the trial court's oral pronouncement." *Home Asset, Inc. v. MPT of Victory Lakes Fcer, LLC*, No. 01-22-00441-CV, 2023 WL 3183322, at *2 (Tex. App.—Houston [1st Dist.] May 2, 2023, no pet.) (mem. op.).

## IV. Analysis

Appellants argue that the temporary injunction does not comply with Rule 683 because it fails to (1) set forth the reasons for issuance, (2) specify its terms, and

(3) describe in reasonable detail the acts sought to be restrained. Referring to the temporary injunction as a "boilerplate recitation[] of legal principles," Appellants contend that the temporary injunction is conclusory, that it fails to set forth any facts or evidence of their specific conduct that would justify injunctive relief, that it fails to describe how First Command has a probable right of recovery, and that it fails to describe First Command's irreparable injury or harm. Appellants also contend that the temporary injunction "does not distinguish between persons or accounts" that they "can and cannot contact" and that determining what conduct violates the injunction "requires inferences and conclusions about which reasonable persons might differ."

**A. Reasons for the Temporary Injunction's Issuance**

Read in its entirety—rather than the fragmentary language provided in Appellants' brief—the temporary injunction adequately sets forth the reasons for its issuance. Specifically, it states that after reviewing First Command's temporary-injunction application and considering the testimony, documents, evidence, and arguments of counsel, the trial court

> finds that First Command has presented evidence showing a probable right of recovery on [its] causes of action . . . against [Appellants] and probable injury to First Command in the interim if a [t]emporary [i]njunction is not entered. . . . First Command's rights regarding its (i) proprietary and confidential information, including, but not limited to, client lists, client contact information, client personal information, client financial information, and other records used to conduct the business of First Command, (ii) business relationships with its clients, and (iii) reputation and goodwill are being, and will continue to be, violated and harmed by [Appellants], unless [Appellants] are immediately restrained.

8

The [trial c]ourt finds that First Command has established a probable right of recovery on its claims against [Appellants] for breach of contract. *See*[,] *e.g.*, *Walling v. Metcalf*, 863 S.W.2d 56, 57–58 (Tex. 1993) (granting request for temporary injunctive relief on plaintiff's claim for breach of contract because plaintiff established probable right of recovery); [*K & G*] *Oil Tool & Serv. Co. v. G&G Fishing Tool Serv.*, 314 S.W.2d 782, 789 (Tex. 1958) (stating protection of trade secrets is a well-recognized objective of equity and injunctive relief).

The [trial c]ourt also finds that First Command has presented sufficient evidence showing that it took reasonable and necessary steps to protect its confidential information, including, without limitation, client lists, client contact information, client personal information, client financial information, and other internal records used to conduct the business of First Command; that such information is protectable confidential information; and that [Appellants] misappropriated such information and are using it to unfairly solicit clients of First Command. *See*[,] *e.g.*[,] *Fox v. Tropical Warehouses, Inc.*, 121 S.W.3d 853, 857–[]58 (Tex. App.—Fort Worth 2003, [no pet.]) (wholesaler's price lists, sales reports, and certain business records constituted "trade secrets," where wholesaler did not intend to share information with outside parties and took steps to limit number of employees with access to information, information was generally not shared within industry, and information was important to wholesaler's business); *Hyde Corp. v. Huffines*, 314 S.W.2d 763, 77[6] (Tex. 1958) . . . (trade secrets may include any "compilation of information which is used in one's business[] and which gives him an opportunity to obtain an advantage over competitors who do not know or use it[]" [(quoting Restatement of Torts § 757)]); *Hill v. McLane Co.*, No. 03-10-00293-CV, [2011 WL 56061, at *7] (Tex. App.—Austin Jan. 5, 2011, no pet.) [(mem. op.)] (upholding temporary injunction against defendants who had acquired confidential information belonging to the plaintiff and finding defendants' status as an employee or independent contractor irrelevant); *Flake v. EGL Eagle Global Logistics, L.P.*, No. 14-01-01069-CV, [2002 WL 31008136, at *4] (Tex. App.—Houston [14th Dist.] Sept. 5, 2002, pet. denied) [(not designated for publication)] (finding that evidence of a former employee's receipt of confidential information, including client lists and pricing information, and the former employee calling on the company's accounts was enough for the trial court to reasonably conclude that the former employee had breached his nondisclosure agreement).

It also states that, in granting injunctive relief, the trial court "carefully balanced the equities and other factors and f[ound] that the limited, narrowly[ ]tailored request for a temporary injunction [wa]s well-taken due to the significant potential of irreparable harm to First Command without the temporary injunction and the lack of harm to [Appellants]."

The temporary injunction further identifies the harm that First Command would suffer if Appellants continued to violate the terms of the Agreements:

> The [trial c]ourt further finds that First Command has demonstrated a probable injury to First Command in the interim if this [t]emporary [i]njunction is not granted against [Appellants] and [Appellants] are permitted to continue to breach their contracts with First Command [(the Agreements)], continue to use First Command's confidential information for the benefit of [Appellants] and/or other competing financial services companies with which they are affiliated, including, without limitation, Diamond Wealth Advisors and Carson Partners. *See*[,] *e.g.*, *Graham v. Mary Kay Inc.*, 25 S.W.3d 749, 753 (Tex. App.—Houston [[14th Dist.]] 2000, pet. denied) (loss of goodwill, clientele, marketing techniques and office stability constitute a "probable injury" for purposes of obtaining an injunction); *Williams v. Compressor Eng*[']*g Corp.*, 704 S.W.2d 469, 473 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd[] n.r.e.) (where former agents have and are expected to continue to disclose information in the future, irreparable injury is established as a matter of law); *Rugen v. Interactive Bus. Sys., Inc.*, 864 S.W.2d 548, 552 (Tex. App.—Dallas 1993, no writ) (possession of confidential information and evidence that defendant was in position to use it justified temporary injunction).
>
> The [trial c]ourt further finds that harm to First Command is imminent, and if the [trial c]ourt does not issue this temporary injunction, First Command will be irreparably injured. The wrongful use and compromise of First Command's confidential information will damage its business relationships, reputation, goodwill, and contracts and result in irreparable harm to First Command. Further, where, as

10

here, a former independent contractor probably will disclose the company's confidential information in the future to benefit a competitor, irreparable injury is established. *See*[,] *e.g., K & G Oil Tool & Serv. Co.*, 314 S.W.2d at 790 (stating that "[t]he protection of a trade secret is a well[-]recognized objective of equity"); *T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 24 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd) (holding that "[i]njunctive relief is proper to prevent a party, which has appropriated another's trade secrets, from gaining an unfair market advantage" and that "[t]he only effective relief available to appellee is to restrain appellants' use of its trade secrets and confidential information pending trial"); *Martin v. Linen Sys. for Hosps., Inc.*, 671 S.W.2d 706, 710 (Tex. App.—Houston [1st Dist.] 1984, no writ) (finding that damages could not be readily ascertained from the former employee's breach of the noncompetition agreement because "a dollar value cannot easily be assigned to a company's loss of clientele, goodwill, marketing techniques, office stability, etc."); *David v. Bache Halsey Stuart Shields, Inc.*, 630 S.W.2d 754, 757 (Tex. App.—Houston [1st Dist.] 1982, no writ) (finding that "[o]ne cannot assign a dollar value to a company's loss of clientele, good[]will, office stability, commission schedules, marketing techniques, and investment strategies").

. . . [T]he wrongful use and dissemination of First Command's confidential information and harm to its business relationships, contracts, and reputation and loss of goodwill cannot be adequately remedied by an award of damages. The use and disclosure of First Command's confidential and/or proprietary information, interference with First Command's relationships with its clients, and injury to First Command's goodwill cannot be adequately remedied with monetary damages because such injuries are impossible to calculate. Therefore, no adequate remedy at law exists. Furthermore, greater injury will be inflicted upon First Command by the denial of a temporary injunction than would be inflicted upon [Appellants] by the granting of such relief.

From the context of the entire temporary injunction, it sufficiently states that First Command has a probable right of recovery; it sets forth the actions or conduct of Appellants justifying its issuance; and it describes the irreparable injury or harm that First Command would suffer without its issuance:

11

- First Command has presented evidence showing a probable right of recovery. Specifically, First Command has established a probable right of recovery on its breach-of-contract claim.

- Appellants have violated and harmed—and will continue to violate and harm—First Command's rights regarding its proprietary and confidential information, its business relationship with its clients, and its reputation and goodwill. Appellants have done so by misappropriating First Command's confidential information and by using it to unfairly solicit First Command's clients.

- Appellants have breached the Agreements by using First Command's confidential information for the benefit of themselves and other competing financial service companies, i.e., Diamond Wealth and Carson Partners.

- If the temporary injunction were not granted, Appellants would continue to breach the Agreements.

- Without the temporary injunction, Appellants would probably disclose First Command's confidential information in the future to benefit a competitor of First Command.

- Appellants' continued wrongful use and compromise of First Command's confidential information would interfere with and damage First Command's business relationships, reputation, goodwill, and contracts and would result in irreparable harm.

- The harm to First Command cannot be remedied with monetary damages.

And if there were any question about what constitutes "confidential information," the temporary injunction defines it in two places as "client lists, client contact information, client personal information, client financial information, and other internal records used to conduct the business of First Command."

Contrary to Appellants' contention, Rule 683 does not require that the trial court explain in the temporary injunction its reasons for finding that First Command has a probable right of recovery. *See* Tex. R. Civ. P. 683; *IAC Ltd. v. Bell Helicopter*

12

*Textron, Inc.*, 160 S.W.3d 191, 201 (Tex. App—Fort Worth 2005, no pet.); *Martin*, 671 S.W.2d at 710. And nothing in Rule 683 requires that the trial court "mention[]" in the temporary injunction the evidence upon which it relied in granting injunctive relief.[3] *See* Tex. R. Civ. P. 683; *cf. Home Asset*, 2023 WL 3183322, at *2 (noting that "we cannot infer the reasons for an injunction from . . . evidence presented at the hearing on the application"). Rather, Rule 683 requires only that the temporary injunction explain the reasons why the trial court believes that injury will be suffered in the absence of injunctive relief. *See* Tex. R. Civ. P. 683; *Home Asset*, 2023 WL 3183322, at *2; *Martin*, 671 S.W.2d at 710.

We conclude that the temporary injunction, on its face, sufficiently sets forth the reasons for its issuance. *See Spain v. ManPow, LLC*, No. 02-24-00154-CV, 2025 WL 1271957, at *12 (Tex. App.—Fort Worth May 1, 2025, no pet.) (mem. op.) (concluding that injunction order's irreparable-injury articulation—a probable likelihood of the company's losing customers and accounts and suffering unquantifiable damages to its business reputation and goodwill—was sufficiently specific to satisfy Rule 683); *Miller v. Talley Dunn Gallery, LLC*, No. 05-15-00444-CV, 2016 WL 836775, at *6 (Tex. App.—Dallas Mar. 3, 2016, no pet.) (mem. op.) (upholding temporary injunction providing that defendant's conduct had jeopardized plaintiffs' confidential information, business relationships, reputation, and goodwill

---

[3]In their brief, Appellants appear to argue that the testimony and sixty-one exhibits admitted during the temporary-injunction hearing should have been "mentioned as a basis for the issuance of the temporary injunction."

and that because of defendants' conduct, plaintiffs had suffered and would continue to suffer irreparable harm for which there was no adequate remedy at law); *IAC Ltd.*, 160 S.W.3d at 200 ("When a defendant possesses trade secrets and is in a position to use them, harm to the trade secret owner may be presumed."); *Martin*, 671 S.W.2d at 710–11 (concluding that reasons stated in temporary injunction—that relief was necessary to protect employer's goodwill and business, that former employee had violated covenant not to compete and probably would continue to do so, and that employer would be harmed unless relief were issued—constituted sufficient compliance with Rule 683); *see also K & G Oil Tool & Serv.*, 314 S.W.2d at 789 (noting that the protection of trade secrets is a well-recognized objective of injunctive relief); *Intercont'l Terminals Co. v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 895 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("Threatened injury to a business's reputation and good[]will with customers is frequently the basis for temporary injunctive relief."); *cf. Williams*, 2023 WL 4781174, at *3 (holding that temporary injunction's stating only that applicant "ha[d] established a probable right to relief[ ] and probable injury if the relief requested in the [a]pplication [was] not granted" was a conclusory statement of probable injury and did not meet Rule 683 requirement that it set forth reasons for its issuance).

## B. The Act or Acts Sought to be Restrained and Specific Terms

The temporary injunction adequately describes the acts to be restrained. It states that "[b]y granting this temporary injunction, [Appellants] will be required to

14

abide by their legal obligations not to (i) breach their agreements with First Command, and (ii) use First Command's confidential information." It then sets forth specific orders:

> [Appellants] . . . are enjoined from directly or indirectly, whether as an employee, agent or representative of any other person, partnership, firm, corporation or other enterprise, inducing or soliciting or in any way attempting to convince, persuade or request in any way any client of First Command who[m] [Appellants] serviced during [their] affiliation with First Command or about whom [Appellants] received First Command confidential information or trade secrets about [sic] to obtain planning or advisory services of the type sold by FCAS, which includes, without limitation, accounts similar to the Asset Management Solutions program, from any other investment advisor or broker/dealer or to purchase insurance products or services of the type sold by FCIS or cancel or replace in-force insurance policies or annuities sold by or through FCIS;

> . . . .

> [Appellants] . . . are enjoined from using, disclosing, transmitting or referring to any First Command client information or First Command's proprietary business information, confidential information or trade secrets accessed, made available, used or obtained while affiliated with First Command in any capacity;

> [Appellants] . . . are enjoined from destroying, erasing or failing to maintain all records or documents, in any form or media (this includes, but is not limited to, electronic data, electronic mail, correspondence, phone logs, computer data, notes, documents and email) in either of [Appellants'] possession, custody or control which relate to (i) any communication between either of the [Appellants] and any First Command client and/or account holder about whom either of the [Appellants] has knowledge because of such [Appellant's] association with First Command or with whom such [Appellant] had contact while associated with First Command; and/or (ii) First Command client information or First Command's proprietary business information, confidential information or trade secrets accessed, made available, used

15

or obtained while affiliated with First Command in any capacity[.] [Numbering omitted.]

The temporary injunction then sets out additional specific terms:

> [Appellants] . . . must return to First Command within 24 hours of receiving constructive or actual notice of the TRO, any and all records, documents and/or information, whether in original, copy, computerized, handwritten or any form, and any reproduction thereof, relating to First Command's account and/or other First Command client-related information, and all other First Command confidential information or trade secrets; [and]
>
> [Appellants] . . . must provide First Command by delivery to Charles River Associates at [XXXX] North Central Expressway, Suite [XXX], Richardson, Texas 75080[,] on or before February 21, 2025[,] all computers or other hardware or devices (including, without limitation, personal cell phones) owned by any of the [Appellants] . . . that contain any First Command client data or other First Command confidential information for imaging and inspection and for removal of First Command client data or other First Command confidential information[.]
>
> This [t]emporary [i]njunction shall remain in effect until the earlier of 60 days after the conclusion of the arbitration of this dispute before the American Arbitration Association (Case No. [XXXXX]) or the trial on [First Command's] [a]pplication for [p]ermanent [i]njunction . . . .
>
> . . . .
>
> Nothing in this [t]emporary [i]njunction shall be construed to interfere with any client's request to transfer his or her account. [Numbering omitted.]

From the context of the entire temporary injunction, it sets forth the acts and conduct

from which Appellants are enjoined and is specific in its terms:

- Appellants must abide by their specific legal obligation of not breaching the Agreements with First Command.

16

- Appellants must abide by their specific legal obligation of not using First Command's confidential information.

- Appellants are enjoined from inducing or soliciting or attempting to convince, persuade, or request First Command clients to obtain planning or advisory services—specifically the type sold by FCAS, including accounts like the Asset Management Solutions program—from any other investment advisor, broker, or dealer. If Appellants, during their affiliation with First Command, serviced the client or received First Command confidential information or trade secrets about the client, the client is included in this provision.

- Appellants are enjoined from inducing or soliciting or attempting to convince, persuade, or request First Command clients to purchase insurance products or services—specifically the type sold by FCIS—or cancel or replace in-force insurance policies or annuities—specifically those sold by or through FCIS. If Appellants, during their affiliation with First Command, serviced the client or received First Command confidential information or trade secrets about the client, the client is included in this provision.

- Appellants are enjoined from using, disclosing, transmitting, or referring to any First Command client information or First Command's proprietary business information, confidential information, or trade secrets that were accessed, made available, used, or obtained while Appellants were affiliated with First Command.

- Appellants are enjoined from destroying, erasing, or failing to maintain all records or documents in their possession, custody, or control relating to Appellants' communications with any First Command client or account holder about whom Appellants have knowledge because of their association with First Command or with whom Appellants had contact while associated with First Command.

- Appellants are enjoined from destroying, erasing, or failing to maintain all records or documents in their possession, custody, or control relating to First Command client information or First Command's proprietary business information, confidential information, or trade secrets that were accessed, made available, used, or obtained while Appellants were affiliated with First Command in any capacity.

- Appellants will be in violation of the temporary injunction if they fail to return to First Command within a specified time any and all records, documents, and

information relating to First Command's account, client-related information, and confidential information or trade secrets.

- Appellants will be in violation of the temporary injunction if they fail to provide to First Command—by delivery to a specific address by a specific date—for imaging and inspection all of Appellants' computers, hardware, or other devices (including personal cell phones) that contain any First Command client data or other confidential information.

- The temporary injunction does not interfere with a client's request to transfer his or her account.

And as previously noted, the temporary injunction defined "confidential information" as "client lists, client contact information, client personal information, client financial information, and other internal records used to conduct the business of First Command."

We conclude that the temporary injunction, on its face, is sufficiently specific in terms and sufficiently describes the acts to be restrained. *See Spain*, 2025 WL 1271957, at *10 ("[T]he order itself contained sufficient information from which it can be concluded that the customers referenced are those whom the [appellants] directly interacted with or learned about from their work with [the appellee company], particularly via its software system."); *Mabrey v. SandStream, Inc.*, 124 S.W.3d 302, 320–21 (Tex. App.—Fort Worth 2003, no pet.) (holding temporary injunction satisfied Rule 683 because "confidential information" was defined in the order and necessarily excluded from its prohibitions information that was not secret nor generally known to the public and the order was limited to information obtained by defendant during specific time frame); *see also Layton v. Ball*, 396 S.W.3d 747, 751–53 (Tex. App.—Tyler

2013, no pet.) (reading order as a whole to determine that internal references adequately described prohibited activities in reasonable detail so as to be sufficiently specific under Rule 683); *Lockhart v. McCurley*, No. 10-09-00240-CV, 2010 WL 966029, at *4 (Tex. App.—Waco Mar. 10, 2010, no pet.) (mem. op.) ("The order need not identify the clients by name; it is reasonable to presume that [the enjoined party] is 'sufficiently familiar with the employer's business and its customers to avoid violating the injunction.'" (quoting *Safeguard Bus. Sys., Inc. v. Schaffer*, 822 S.W.2d 640, 644 (Tex. App.—Dallas 1991, no writ))); *cf. Hernandez v. Combined Ins. Co. of Am.*, No. 02-20-00225-CV, 2021 WL 520456, at *24 (Tex. App.—Fort Worth Feb. 11, 2021, pet. denied) (mem. op.) (holding injunction order restraining defendants from contacting clients with whom they had never dealt or about whom they had not known was insufficiently specific because it did not identify who could not be contacted by defendants).

### V. Conclusion

From the context of the entire temporary injunction, we conclude that it meets the requirements of Rule 683. Accordingly, the trial court did not abuse its discretion by denying Appellants' motion to modify or dissolve the temporary injunction. We affirm the trial court's temporary injunction.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: November 26, 2025

19